UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X   CV 11-3851 (RRM)(CLP)
MELANIE APOSTOL and FRANKIE
RODRIGUEZ,

                           Plaintiffs,

                                                               AMENDED COMPLAINT

  -against-

                                                               JURY DEMAND

THE CITY OF NEW YORK, POLICE OFFICER
SKYE MORALES (Shield #18414) and POLICE
OFFICER VOLKAN SARMAN (Shield #31541),

                           Defendants.
-------------------------------------------------------------------X

Plaintiffs MELANIE APOSTOL and FRANKIE RODRIGUEZ, by their attorney(s), THE LAW OFFICES OF WALE MOSAKU, P.C., complaining of the defendants, THE CITY OF NEW YORK, POLICE OFFICER SKYE MORALES (Shield #18414) and POLICE OFFICER VOLKAN SARMAN (Shield #31541) (collectively referred to as the defendants), upon information and belief, allege as follows:

## NATURE OF THE ACTION

1.        This is an action at law to redress the deprivation of rights secured to the plaintiffs under color of statute, ordinance, regulation, custom; and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiffs by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. §1983 [and §1985], [and arising under the law and statutes of the State of New York].

## JURISDICTION

2.        The jurisdiction of this Court is invoked under 28 U.S.C. §1343(3), this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, custom and usage of a right, privilege and immunity secured to the plaintiffs by the Fourteenth Amendment to the

|   |   |
|---|---|
|   | Constitution of the United States. Jurisdiction of this court exists pursuant to 42 USC §1983 and under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. |
| 3. | As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c). |

## THE PARTIES

|   |   |
|---|---|
| 4. | During all times material to this complaint, each plaintiff was, and still is, a resident of the State of New York, presently residing in Richmond County. |
| 5. | At all relevant times, defendants POLICE OFFICER SKYE MORALES (Shield #18414) and POLICE OFFICER VOLKAN SARMAN (Shield #31541) (collectively referred to as "defendant officer(s)"), upon information and belief, were and still are, law enforcement officers in the employ of the Police Department of the City of New York. |
| 6. | At all times herein, the defendant officers were employed as law enforcement officers of the City of New York, State of New York, and were acting under the color of their official capacity, and their acts were performed under color of the statutes and ordinances of the City of New York and/or the State of New York. The defendant officers were the servants, agents, and employees of their co-defendant, the City of New York, so that their acts are imputed to the City of New York and its Police Department. |
| 7. | At all relevant times, the defendant City of New York was/is a municipal corporation of the State of New York, and was/is the employer of the defendant Officers, through its Police Department, namely New York City Police Department and the actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or direction of the City of New York. |

8. Plaintiffs sue all defendants in their individual and official capacities.

SATISFACTION OF THE PROCEDURAL PREREQUISITES FOR SUIT

9. All conditions precedent to the filing of this action have been complied with. On March 11, 2011, within ninety days after all or some of the claims alleged in this complaint arose, written notice(s) of claim, sworn to by each plaintiff, were served upon the defendant City of New York, by personal delivery of the notice in duplicate, to the person designated by law as one to whom a summons issued against such party may be delivered in an action in the applicable Courts. Plaintiff Melanie Apostol's claim was assigned Claim No. 2011PI013533. Plaintiff Frankie Rodriguez' claim was assigned Claim No. 2011PI013535.

10. At least thirty days have elapsed since the service of the above-mentioned notice(s) of claim, and adjustment or payment of the claim(s) have been neglected or refused.

11. This action, pursuant to New York State and City Law, has been commenced within one year after the happening of the event upon which all and/or some of the claim(s) is/are based.

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12. On or about February 1, 2011, at or about 08:00 p.m., at the front of the premises described as 141 Park Hill Avenue in the County of Richmond, Staten Island, City of New York (hereinafter "subject premises"), the plaintiffs were falsely arrested without probable cause by the defendant officers.

13. Prior to the time of her arrest, the plaintiff Melanie Apostol had just finished having her taxes prepared within a tax preparation business located at 132 Osgood Avenue, Staten Island New York.

14. Prior to the time of his arrest, the plaintiff Frankie Rodriguez had just been dropped off by his brother in front of the above-referenced tax preparation business. At that time, it was the plaintiff Frankie

| | |
|---|---|
| | Rodriguez' intention to go to the tax preparation business, his former employer, in order to obtain a copy of his identification. |
| 15. | Both plaintiffs, who at the time had known each other for approximately eight (8) years, and had not seen each other in a while, thus ran into each other at the tax preparation business. |
| 16. | After exchanging greetings, Ms. Apostol offered to drive Mr. Rodriguez to the subject premises (within which Mr. Rodriguez resides), which was approximately three (3) blocks away from the tax preparation business. |
| 17. | Mr. Rodriguez accepted Ms. Apostol's offer. Ms. Apostol then drove Mr. Rodriguez to the front of the subject premises. |
| 18. | Upon their arrival at the subject premises, Ms. Apostol and Mr. Rodriguez continued to converse for approximately two (2) minutes while still seated within the vehicle Ms. Apostol was operating. |
| 19. | As the plaintiffs were thus seated, they observed a marked police vehicle drive by the vehicle the plaintiffs were located in. The police vehicle then made a u-turn and returned to the vehicle the plaintiffs were located in, blocking off the front of said vehicle. |
| 20. | The defendant officers exited the marked police vehicle, and instructed the plaintiffs to exit the vehicle that they were located in. The plaintiffs complied, following which they were immediately handcuffed by the officers. |
| 21. | The plaintiffs were then searched at the scene. Nothing illegal was found upon the persons of any of the plaintiffs. |
| 22. | The plaintiffs were nevertheless told that they were being "contained" at the scene, purportedly because the license plate of the vehicle Ms. Apostol was operating was "coming up stolen". |
| 23. | Ms. Apostol vehemently denied that the vehicle was stolen, and informed the defendant officers that the registration documents of the vehicle she was operating, as well as insurance documentation, were located in the glove compartment of said vehicle. |

24. The plaintiffs were then placed in a police van that arrived after the defendant officers had called for "back-up". The defendant officers informed the plaintiffs that they were going to have the vehicle that Ms. Apostol was operating towed. Ms. Apostol protested at that, insisting that the vehicle was not stolen, and asking why she would have the keys if it was.

25. At that point, the defendant officers decided that they would not have the vehicle towed. Instead, the defendant officers had the vehicle driven to the police precinct. The plaintiffs were also driven to the police precinct. Upon arrival at the precinct, the plaintiffs were again informed that they were "under containment".

26. Upon arrival at the police precinct, the plaintiffs were searched again. Nothing illegal was found upon the person of any plaintiff.

27. Nevertheless, each plaintiff was subsequently fingerprinted and photographed.

28. After a period of time, defendant Skye Morales came back and informed the plaintiffs that he had "good news and bad news, which do you want to hear first?"

29. Defendant Morales then informed the plaintiffs that the good news was that they (arresting officers) had been able to verify that the vehicle Ms. Apostol had been operating was in fact, not stolen.

30. However, defendant Morales now claimed that they (defendant officers) had found marijuana in said vehicle.

31. The plaintiffs immediately protested this new allegation, and asked defendant Morales where the alleged quantity of marijuana had been found.

32. Defendant Morales then stated that he had not personally found the marijuana because he had not searched the vehicle, but that defendant Sarman had found same. As defendant Morales was stating the above to the plaintiffs, defendant Sarman started to yell at Officer Morales, telling defendant Morales that he (Officer Morales) did not have to

|     |     |
| --- | --- |
|     | tell the plaintiffs where they (the officers) had found the purported marijuana, or how much quantity they had found. |
| 33. | Defendant Morales then instructed Ms. Morales to call her mother to retrieve the vehicle she had been operating. |
| 34. | Ms. Apostol indeed called her mother, who subsequently went to the precinct to retrieve the vehicle Ms. Apostol had been operating. |
| 35. | Upon the filing of a criminal complaint that was signed by defendant Morales, Ms. Apostol was subsequently arraigned before a judge in Richmond County Criminal Court on February 2, 2011, at approximately 03:00 p.m. |
| 36. | Within the above-referenced criminal complaint, Ms. Apostol was accused by defendant Morales of having been in unlawful and criminal possession of marijuana (New York Penal Law Sections 221.10(1) and 221.05). |
| 37. | Upon Ms. Apostol's arraignment, the criminal action that had been initiated against her by defendant Morales was adjourned in contemplation of dismissal. The Richmond County Criminal Court Docket number was "2011RI001011". |
| 38. | Upon the filing of a criminal complaint that was signed by defendant Morales, Mr. Rodriguez was subsequently arraigned before a judge in Richmond County Criminal Court on February 2, 2011, at approximately 05:00 p.m. |
| 39. | Within the above-referenced criminal complaint, Mr. Rodriguez was accused by defendant Morales of having been in unlawful and criminal possession of marijuana (New York Penal Law Sections 221.10(1) and 221.05). |
| 40. | Upon Mr. Rodriguez' arraignment, the criminal action that had been initiated against him by defendant Morales was adjourned in contemplation of dismissal. The Richmond County Criminal Court Docket number was "2011RI001012". |

## CAUSE(S) OF ACTION AGAINST EACH DEFENDANT OFFICER: FALSE ARREST AND FALSE IMPRISONMENT UNDER 42 U.S.C § 1983/NEW YORK STATE LAW

41. By this reference, the plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 40 of this complaint as though fully set forth herein.

42. The above-described respective arrest(s), detention(s) and imprisonment(s) of the plaintiffs were without just or probable cause and without any warrant or legal process directing or authorizing each plaintiff's arrest or subsequent detention.

43. As a result of plaintiffs above-described false arrest(s) and imprisonment(s), they have been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know them, were prevented from attending to their necessary affairs, have been caused to incur legal expenses, and have been otherwise damaged in their character and reputation.

44. Consequently, the plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

45. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

## CAUSE OF ACTION AGAINST EACH DEFENDANT OFFICER: UNLAWFUL SEARCH UNDER 42 U.S.C § 1983/NEW YORK STATE LAW

46. By this reference, the plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 45 of this complaint as though fully set forth herein.

47. That upon initially accosting the plaintiffs, the defendants searched and/or caused each plaintiff to be searched, without any individualized reasonable suspicion that said plaintiff was concealing weapons or contraband.

48. As a result of the foregoing, the plaintiffs were subjected to illegal and improper searches.

49. The foregoing searches violated the plaintiffs' constitutional right to privacy, as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

<u>CAUSE OF ACTION AGAINST EACH DEFENDANT OFFICER: FAILURE TO INTERVENE/INTERCEDE UNDER 42 U.S.C § 1983</u>

50. By this reference, the plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 49 of this complaint as though fully set forth herein.

51. Each and every individual defendant had an affirmative duty to intervene on each plaintiff's behalf to prevent the violation to his constitutional rights, as more fully set forth above.

52. The individual defendants failed to intervene on each plaintiff's behalf to prevent the violation of his constitutional rights, despite having had a realistic and reasonable opportunity to do so.

53. As a consequence of said defendants' actions, each plaintiff suffered loss of liberty, humiliation, mental anguish, depression, loss of wages from work, and each plaintiff's constitutional rights were violated. Each plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against each of the defendants, individually and severally.

<u>CAUSE OF ACTION AGAINST EACH DEFENDANT OFFICER: DENIAL OF A CONSTITUTIONAL RIGHT TO A FAIR TRIAL UNDER 42 U.S.C § 1983 DUE TO THE FABRICATION OF EVIDENCE</u>

54. By this reference, the plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 53 of this complaint as though fully set forth herein.

55. The individual defendants created false evidence against each plaintiff.

56. The individual defendants forwarded false evidence and false information concerning each plaintiff to the prosecutors in the Richmond County District Attorney's office.

57. The individual defendants provided false testimony throughout the criminal proceedings.

58. By creating false evidence against each plaintiff; forwarding false evidence and information to the prosecutors; and by providing false and misleading testimony throughout the criminal proceedings, the defendants violated each plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

59. As a consequence of said defendants' actions, each plaintiff suffered loss of liberty, humiliation, mental anguish, depression, loss of wages from work, and each plaintiff's constitutional rights were violated. Each plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against each of the defendants, individually and severally.

## CAUSE OF ACTION AGAINST ALL DEFENDANTS: FALSE ARREST AND FALSE IMPRISONMENT, PURSUANT TO ARTICLE 1, SECTION 12, OF THE NEW YORK STATE CONSTITUTION

60. By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 59 of this complaint as though fully set forth herein.

61. The above-described respective arrest, search, detention, imprisonment and prosecution of the plaintiff were without just or probable cause and without any warrant or legal process directing or authorizing the plaintiff's arrest or subsequent detention.

62. As a result of the plaintiff's above-described false arrest, search, imprisonment and prosecution, he was caused to suffer humiliation,

   great mental and physical anguish, embarrassment and scorn among those who know him, was prevented from attending to his necessary affairs, and has been otherwise damaged in his character and reputation.

63. Consequently, the plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

64. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

CAUSE OF ACTION: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

65. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 64 of this complaint as though fully set forth herein.

66. The defendants arrested and incarcerated each plaintiff, in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest(s) and incarceration(s) would jeopardize each plaintiff's liberty, well-being, safety and constitutional rights.

67. The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

68. The defendant officers acted under color of law, in their official capacity, and their acts were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department.

69. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practices:

        a. Wrongfully arresting individuals on the pretext that they are/were involved in illegal drug transactions and/or activities;

        b. manufacturing evidence against individuals allegedly involved in illegal drug transactions and/or activities;

        c. unlawfully strip-searching pre-arraignment detainees in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband; and arresting innocent persons in order to meet "productivity" goals (i.e. arrest quotas).

70. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the numerous civil rights actions filed against the City of New York in the state and federal courts.

71. The existence of the aforesaid unconstitutional customs and policies may also be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on January 20, 2006, that commanders are permitted to set "productivity goals".

72. Furthermore, the existence of the aforesaid unconstitutional customs and policies may also be inferred from the ruling (Docket entry 32) of the Court, in the case(s) of <u>Jose Colon v. City of New York</u>, et al (09-cv-8) and <u>Maximo Colon v. City of New York</u>, et al (09-cv-9), wherein the Court stated, *inter alia*, that "*Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department*", and that "*there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving the illegal conduct of the kind now charged*".

73. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, constituted a deliberate indifference to the safety, well-being and constitutional rights of all

defendants, including but not limited to the plaintiff; were the proximate cause of, and moving force behind, the constitutional violations suffered by the plaintiff as alleged herein, and deprived plaintiff of the following rights, privileges and immunities secured to her by the Constitution of the United States:

(a) The right of each plaintiff to be secure in his/her person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

(b ) The right of each plaintiff not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured to him/her by the Fifth and Fourteenth Amendments to the Constitution of the United States.

(c) The right to be free from unreasonable detention and/or continued detention without probable cause in that each plaintiff was detained and subsequently prosecuted.

74. As a result of the actions of the defendants, each plaintiff was deprived of his/her rights, privileges, and immunities secured by the United States Constitution, in particular, the Fourth, Fifth, and Fourteenth Amendments, in contravention of 42 USC §1983 and the laws of New York State, without just or legal cause when defendant City, by its employees and/or agents unlawfully arrested and imprisoned each plaintiff thereby depriving each plaintiff of his/her liberty without due process of law.

75. The defendant officers were the actual agents of the defendant City of New York and were following the customs, practices, ordinances and/or regulations of the City of New York when they violated the plaintiffs constitutional and civil rights, and the City of New York is therefore responsible for their acts, and liable to the plaintiffs for the damages they suffered.

76. The actual principal/agent relationship between defendant City and the defendant officers was created by the fact they were employees of

defendant City, and the City had the right to, and it did indeed regulate and control the activities and conduct of the defendant officers.

77. The defendants' actions were vicious, wicked, cold-hearted, intentional, malicious, unwarranted and in violation of the law. The individual defendants had full knowledge that the charges made before the Court against the plaintiffs were false and untrue.

WHEREFORE, each plaintiff respectfully prays judgment as follows:

1. For compensatory damages against all defendants in an amount to be proven at trial;

2. For exemplary and punitive damages against all defendants in an amount to be proven at trial;

3. For costs of suit herein, including each plaintiff's reasonable attorney's fees; and;

4. For such other and further relief as the court deems proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, each plaintiff demands a trial by jury.

Dated: Brooklyn, New York
January 3, 2012

LAW OFFICES OF WALE MOSAKU, P.C.

By:   /s/

Wale Mosaku (AM5872)
Attorney(s) for the Plaintiffs
25 Bond Street, 3rd Floor
Brooklyn, N.Y. 11201
(718) 243-0994

TO:

Suzanna Publicker, Esq.
Assistant Corporation Counsel
City of New York Law Department
Attorney(s) for Defendants
The City of New York and Police Officer Skye Morales
100 Church Street

New York, N.Y. 10007
(212) 788-1103

Police Officer Volkan Sarman (Shield # 31541)
Defendant Pro Se
Staten Island Task Force
1 Edgewater Plaza, Room 504
Staten Island, New York 10305