UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MELANIE APOSTOL and FRANKIE
RODRIGUEZ,

                Plaintiffs,

- against -

THE CITY OF NEW YORK, POLICE OFFICER
SKYE MORALES (Shield # 18414) and POLICE
OFFICER VOLKAN SARMAN (Shield # 31541)

                Defendants.
----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
11–CV–3851 (RRM)(CLP)

ROSLYNN R. MAUSKOPF, United States District Judge:

       Plaintiffs Melanie Apostol and Frankie Rodriguez bring this action against the City of New York, and New York City Police Department ("NYPD") Officers Skye Morales and Volkan Sarman (collectively, "defendants"), alleging several civil rights violations.  Presently before the Court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  For the reasons stated below, defendants' motion is granted.

## BACKGROUND[1]

       This action arises from the arrest of Apostol and Rodriguez on February 1, 2011.  On that day, plaintiffs, who are friends, ran into each other at a local tax preparation store.  (Apostol Dep., Apr. 11, 2012 ("Apostol Dep."), Mosaku Decl. (Doc. No. 66) Ex. 1 at 16:22–23.)  Apostol offered Rodriguez a ride home in her car, which Rodriguez accepted.  (*See id.* at 26:7–27:20.)

---

[1] At this stage, the evidence of a nonmovant "is to be believed" and the Court must draw all "justifiable" or reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *see also Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004).  Accordingly, the Court considers the facts in the light most favorable to the non-moving party as to each claim, drawing all reasonable inferences in that party's favor.  *See Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002).

Apostol drove Rodriguez to the front of Rodriguez's apartment building and stopped the car near a fire hydrant. (*Id.* at 28:4–29:24.) Apostol was sitting in the driver's seat, and Rodriguez was in the front passenger's seat. (*Id.*)

At approximately 7:40 P.M., while on patrol in an NYPD vehicle, Officers Morales and Sarman noticed plaintiffs sitting in Apostol's vehicle. (Defs.' 56.1 Stmt. ("Defs.' 56.1") ¶ 11 (Doc. No. 64).) Sarman, believing that the vehicle was parked illegally, used the computer system in his police car to run a search of the vehicle's license plates in the New York State Police Information Network ("NYSPIN") database. (*Id.* ¶ 12.) NYPSIN indicated that the license plates had been reported stolen from Schenectady, New York. (*Id.* ¶ 13.) Morales then drove the police vehicle in front of Apostol's car to block it from leaving the scene, and defendants approached Apostol's car. (*See* Apostol Dep. at 31:21–32:20.)

According to Officer Morales, upon reaching the passenger side of Apostol's car, he observed one marijuana cigarette in the center console, one marijuana cigarette on the passenger-side floorboard, and a small quantity of "loose marijuana" on both the passenger-side and driver-side floorboards. (Defs.' 56.1 ¶ 17; Morales Dep., Apr. 12¸ 2012 ("Morales Dep."), Mosaku Decl. Ex. 3 at 51:22–52:21.) Morales then asked Rodriguez to step out of the car and took Rodriguez to the rear of the car. (*Id.* at 54:12–55:23.) Officer Sarman approached the driver's side of the car, told Apostol to exit, and, once Apostol did so, handcuffed Apostol and took her to the rear of the car as well. (Apostol Dep. at 36:18–37:25; Sarman Dep., Apr. 12, 2012 ("Sarman Dep."), Mosaku Decl. Ex. 4 at 30:4–32:19.) After both plaintiffs were outside Apostol's car, Morales showed the marijuana to Sarman (Def.'s 56.1 ¶ 18; Sarman Dep. at 35:25–36:20, 38:19–39:3.) Morales retrieved and secured the two marijuana cigarettes at the scene but did not secure the loose marijuana until Apostol's car had been driven to the precinct. (*See* Morales Dep. at

2

63:3–64:16, 87:21–89:3; Ex. 6.) While Morales testified that Sarman transported Apostol's car to the precinct (*see* Morales Dep. at 87:21–88:4), Sarman testified that he could not recall whether the vehicle he drove to the precinct was Apostol's or the NYPD's (*see* Sarman Dep. at 53:17–54:15).

When defendants arrived at the precinct, the sole charge they entered into the command log in connection with plaintiffs' arrest was "GLA" (grand larceny auto) (*see* Pls.' 56.1 ¶ 22; Publicker Decl. Ex. G (Doc. No. 63).) Morales testified that he vouchered both the cigarettes and the loose marijuana at the precinct. (Morales Dep. at 64:14–16.) While subsequent field and laboratory tests confirmed that the cigarettes Morales vouchered, in fact, contained marijuana, the record contains no voucher or lab report concerning the loose marijuana. (*See* Defs.' 56.1 ¶¶ 28–29; Mosaku Decl. Ex. 20.)

According to plaintiffs, in contrast, Apostol's car did not contain any marijuana. (*See* Apostol Dep. at 45:5–47:11; Rodriguez Dep., Apr. 11, 2012 ("Rodriguez Dep."), Mosaku Decl. Ex. 2 at 40:23–41:4.) Rather, according to Rodriguez, defendants "toss[ed] up" the vehicle while looking for contraband but did not find anything. (Rodriguez Dep. at 36:3.) After plaintiffs were arrested and searched, they were placed in the back of Apostol's car for about five minutes. Two or three additional officers arrived in an NYPD van and drove plaintiffs, in the van, to the precinct. (*See id*. 39:20–21, 41:11–12; Apostol Dep. at 47:15–24.) After the police discovered that the plates on Apostol's car were, in fact, not stolen, they informed plaintiffs that they had found marijuana in Apostol's car. (Pls.' 56.1 Stmt. ("Pls.' 56.1") ¶ 17 (Doc. No. 67).)

In any event, it is undisputed that at approximately 8:01 P.M., defendants arrested, handcuffed and searched both plaintiffs, and other members of the NYPD transported plaintiffs to the 120th Precinct. (*See* Pls.' 56.1 ¶¶ 20–22.) Within an hour of arriving back at the precinct,

Morales contacted the Schenectady Police Department to verify that the plates on Apostol's car were stolen. (Morales Dep. at 66:9–17.) The Schenectady Police Department informed Morales that, in fact, the plates were not stolen. (*Id*. at 66:18–24.) Morales then processed plaintiffs' arrest based solely on the marijuana allegedly in Apostol's car. (*Id*. at 69:20–70:18.) Sarman transferred information Morales had handwritten on the arrest paperwork into an NYPD computer. (Sarman Dep. at 46:11–16.) Morales later prepared and signed charging documents in Richmond County Criminal Court, wherein he describes observing Apostol and Rodriguez in a vehicle along with two cigarettes containing "a dried green leafy substance" and "a loose quantity of the same dried leafy green substance" Morales determined was marijuana. (*Id*. at 97:18–98:25; Feb. 2, 2011 Criminal Complaint ("Crim. Compl."), Mosaku Decl. Ex. 19.)

Plaintiffs were confined for several hours between the time of their arrest and their February 2, 2011, arraignment in Richmond County Criminal Court, when they were both charged with criminal possession of marijuana in the fifth degree, N.Y. Penal L. § 221.10(1), and unlawful possession of marijuana, *id*. § 221.05. (Pls.' 56.1 ¶¶ 30–31.) Apostol was arraigned at 3:00 P.M., approximately nineteen hours after her arrest, and she subsequently accepted an adjournment in contemplation of dismissal ("ACD").[2] (Am. Compl. ¶¶ 35–37 (Doc. No. 14).) Rodriguez was arraigned at 5:00 P.M., approximately twenty-one hours after his arrest, and also

---

[2] Under New York law, an ACD is "an adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice." N.Y. Crim. P. L. § 170.55(2). An ACD can be offered at any time before a guilty plea or trial. *Id*. § 170.55(1). Once a defendant accepts an ACD, the state is given six months to decide whether to petition the court to restore the case to the calendar. *Id*. § 170.55(2). If the case is not restored within those six months, it is dismissed. *Id*. There is some dispute about the exact point at which Apostol accepted her ACD. Defendants argue that Apostol was initially released on her own recognizance, but voluntarily appeared in court again on February 16, 2011 to accept the ACD, while plaintiffs argue that Apostol accepted the ACD at her arraignment on February 2, 2011. (*See* Pls.' 56.1 ¶¶ 37–38.) Ultimately, this dispute is immaterial as plaintiffs concede that Apostol accepted an ACD and appeared twice in Criminal Court in connection with her February 1, 2011 arrest. (*See* Am. Compl. ¶ 37; Pls.' 56.1 ¶ 39.)

4

accepted an ACD. (*See id*. ¶ 38–40.) The prosecution took no further action against plaintiffs, and ultimately, the court dismissed the charges against them. (*See* Pls.' 56.1 ¶¶ 33–39.)

Plaintiffs commenced this action on August 6, 2011 (*see* Doc. No. 1) and amended their complaint on January 4, 2012. (*See* Am. Compl.) At this stage of the proceedings, the only remaining claims are (1) Rodriguez's claims for false arrest and false imprisonment pursuant to 42 U.S.C. § 1983 and New York State law; (2) Rodriguez's claim against the City for *respondeat superior* liability relating to his state law cause of action for false arrest; (3) plaintiffs' claim against Morales and Sarman for denying their right to a fair trial by fabricating evidence; and (4) plaintiffs' claims against Morales and Sarman for failing to intervene to prevent violations of plaintiffs' constitutional rights. (*See* Doc. Nos. 57, 61.) Defendants move for summary judgment on these remaining claims.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits in the record demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Brosseau v. Haugen,* 543 U.S. 194, 195 n.1 (2004). The court must not "weigh the evidence but is instead required to

5

view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). Summary judgment is improper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1560 (2d Cir. 1991).

"A plaintiff opposing a motion for summary judgment must lay bare his proof in evidentiary form and raise an issue of fact sufficient to send to the jury." *Longi v. Cnty. of Suffolk*, No. 02 CV 5821, 2008 WL 858997, at *6 (E.D.N.Y. Mar. 27, 2008) (internal quotation marks omitted). The plaintiff "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ("[T]he nonmoving party must come forward with 'specific facts showing there is a genuine issue for trial.'" (quoting Fed. R. Civ. P. 56(e))); *Anderson*, 477 U.S. at 256 (stating that non-movant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor"). "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks omitted) (emphasis in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

## II. Defendants Are Entitled to Summary Judgment on All of the Remaining Claims

### A. Rodriguez's False Arrest, False Imprisonment, and *Respondeat Superior* Claims

The elements of a false arrest claim under 42 U.S.C. § 1983 are "substantially the same" as the elements of a false arrest claim under New York law.[3] *Posr v. Dougherty*, 944 F.2d 91, 96 (2d Cir. 1991). To establish a claim for false arrest under New York law, a plaintiff must show that (1) defendant intended to confine plaintiff, (2) plaintiff was conscious of the confinement, (3) plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (citing *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Weyant*, 101 F.3d at 852 (internal quotations omitted); *see also Decker v. Campus*, 981 F. Supp. 851, 856 (S.D.N.Y. 1996) ("If there existed probable cause at the time of the arrest, the arrest is 'privileged,' and the individual has no constitutional or statutory claim against the officer who made the arrest."). "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer*, 63 F.3d at 118–19 (citing reference omitted); *see also Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) ("[A]n arrest is not unlawful so long as the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to provide probable cause to believe that the person arrested has committed *any* crime." (emphasis added)). In determining

---

[3] Rodriguez alleges "false arrest" and "false imprisonment." These terms are "largely synonymous because an imprisonment starts at the moment of arrest." *Jenkins v. City of New York*, 478 F.3d 76, 88 n.10 (2d Cir. 2007) (internal quotation marks omitted). Therefore, the Court's finding with regard to one applies equally to the other.

7

whether probable cause existed for Rodriguez's arrest, the Court must consider the totality of the circumstances in light of the facts Morales and Sarman knew at the time of the arrest. *See Jenkins v. City of New York,* 478 F.3d 76, 90 (2d Cir. 2007) (noting that "[p]robable cause is, of course, evaluated on the totality of the circumstances"); *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) ("[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest."). "[P]robable cause can . . . exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 221 (E.D.N.Y. 2007) (quoting *Bernard v. United States*, 25 F.3d 98 (2d Cir. 1994)).

Here, defendants had probable cause to arrest Rodriguez, the passenger in Apostol's car. It is undisputed that, after observing the illegally parked vehicle, defendants searched for the car's plates in the NYSPIN database, which indicated that the car's license plates were stolen. NYSPIN provides reasonably trustworthy information, and therefore, the officers reasonably believed that plaintiffs were sitting in a stolen vehicle. *See United States v. Santa*, 180 F.3d 20, 27 (2d Cir. 1999) (finding it was objectively reasonable for officers to rely on NYSPIN record indicating that arrest warrant had been issued for plaintiff, though record later proved to be erroneous). Under New York State law, a person commits a crime by knowingly riding in or using a stolen vehicle. *See, e.g.* N.Y. Penal Law § 165.05 ("A person is guilty of unauthorized use of a vehicle in the third degree when: 1. Knowing that he does not have the consent of the owner, he takes, operates, exercises control over, rides in or otherwise uses a vehicle. A person who engages in any such conduct without the consent of the owner is presumed to know that he does not have such consent."); *see also In re Raquel M.*, 782 N.E. 2d 64 (N.Y. 2002) (upholding

statutory presumption that a person riding in a vehicle without the owner's consent is presumed to be aware of the fact). Given the circumstances, it was reasonable for Apostol and Sarman to believe that Rodriguez had committed, or was committing, a crime. As such, the officers had probable cause to arrest Rodriguez.[4] That defendants later learned the vehicle was not stolen and charged Rodriguez with a different crime is irrelevant. *See, e.g.*, *United States v. Towne*, 870 F.2d 880, 884–85 (2d Cir. 1989) (finding that officers had probable cause to arrest even though arrest was based on erroneous NCIC record); *Santa*, 180 F.3d at 27 ("[T]he arresting officers' reliance on the NYSPIN record to arrest Santa was objectively reasonable. At the time of Santa's arrest, the arresting officers did not know, and had no reason to know, that the warrant had been vacated."); *c.f. United States v. Miller*, 265 F. App'x 5, 7 (2d Cir. 2008) ("When an officer learns from a computer database, such as NYSPIN, that a person is the subject of an outstanding arrest warrant, probable cause exists to arrest that person."). Furthermore, because defendants had probable cause to arrest plaintiffs, Rodriguez's *respondeat superior* claim against the City also fails.

Accordingly, defendants are entitled to summary judgment on Rodriguez's false arrest, false imprisonment, and *respondeat superior* claims.

### B. Plaintiffs' Claim for Denial of the Right to a Fair Trial

Plaintiffs claim that defendants fabricated evidence of marijuana possession and that, as a result, each plaintiff spent close to twenty hours in custody. "When a police officer creates false

---

[4] At the very least, defendants would be entitled to qualified immunity. An officer is entitled to qualified immunity on a false arrest claim if either: "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007). Here, defendants are entitled to qualified immunity because it was objectively reasonable for them to believe, based on the NYSPIN results, that probable cause existed to arrest Rodriguez. *See Mayer v. City of New Rochelle*, No. 01 CV 4443, 2003 WL 21222515, at *5–6 (S.D.N.Y. May 27, 2003) (finding that defendant officers were entitled to qualified immunity on false arrest claim because it was objectively reasonable for them to rely on erroneous NYSPIN records); *Muhammad v. City of Peekskill*, No. 06 CV 1899, 2008 WL 4525367, at *6 (S.D.N.Y. Sept. 30, 2008).

9

information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997). "Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable corruption of the truth-seeking function of the trial process." *Id.* (internal quotation marks omitted). To prevail on a claim for denial of the right to a fair trial, a plaintiff must show that "(1) [an] investigating official (2) fabricate[d] evidence (3) that [wa]s likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012); *see also Keller v. Sobolewski*, No. 10 CV 5198, 2012 WL 4863228, at *4 (E.D.N.Y. Oct. 12, 2012) ("The harm suffered by an individual bringing a deprivation of the right to a fair trial claim is the 'deprivation of liberty' that occurs 'because of the fabrication.'") (quoting *Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000)).

As an initial matter, courts in this Circuit, in cases squarely on point, have ruled that a plaintiff's accepting an ACD does not preclude a fair trial claim. *See Keller*, 2012 WL 4863228, at *4–5 ("[N]o precedent exists, in this circuit or otherwise, for dismissing a § 1983 claim for deprivation of the right to a fair trial in light of a plaintiff's acceptance of an ACD."); *Dowling v. City of New York*, No. 11 CV 4954, 2013 WL 5502867, at *7 (E.D.N.Y. Sept. 30, 2013) ("Plaintiff's twenty-four hours in jail, culminating, like [the plaintiff in *Keller*] in adjournment in contemplation of dismissal, is similar enough to warrant a finding that he was deprived of his

liberty.").[5] This Court finds, in accordance with *Keller* and *Dowling*, that plaintiffs' accepting ACDs does not preclude their fair trial claims.

To support their claim that defendants fabricated the marijuana evidence, plaintiffs offer their own testimony that Apostol's car contained no marijuana. They also argue that it is suspect that the police informed plaintiffs of the marijuana charges only after discovering that the plates on Apostol's car were, in fact, not stolen. Finally, plaintiffs argue that certain purported discrepancies in defendants' post-arrest paperwork are suspect – specifically, defendants produced no voucher for the alleged loose marijuana, Sarman's memo book contains no notations about finding any marijuana in connection with plaintiffs' arrests,[6] Sarman wrote in his memo book that an unspecified vehicle contained "no contraband" (Sarman Dep. at 53:16–54:23),[7] and the sole charge defendants entered into the command log upon returning to the precinct from plaintiffs' arrest was "GLA" (grand larceny auto) (*see* Pls.' 56.1 ¶ 22; Publicker Decl. Ex. G (Doc. No. 63).)

Notwithstanding these claims, the Court finds that defendants are entitled to summary judgment on the fair trial claims. As an initial matter, it is undisputed that Sarman did not swear

---

[5] Defendants cite cases that stand for the general proposition that a fair trial claim requires a conviction. *See Alford v. City of New York*, No. 11 CV 622, 2012 WL 3764429 ("In a cause of action based on the denial of the right to a fair trial, the deprivation of liberty necessarily involves a conviction and a resulting sentence.") (granting motion to dismiss, where, after prosecution rested at bench trial, court granted defendant's motion to dismiss); *Perez v. Cuomo*, No. 09 CV 1109, 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 17, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.") (internal quotation marks omitted) (reasoning that plaintiff's valid criminal conviction precluded claim). Many courts in this Circuit, however, have taken the contrary position. *See*, *e.g.*, *Baez v. Jetblue Airways Corp.*, No. 09 CV 596, 2009 WL 2447990, at *8 (E.D.N.Y. Aug. 3, 2009) ("A plaintiff need not show that she was convicted or that a trial took place."); *Johnson v. City of New York*, No. 06 CV 630, 2010 WL 2771834, at *11 (E.D.N.Y. July 13, 2010) (same); *Schiller v. City of New York*, No. 04 CV 7922, 2008 WL 200021, at *10 (S.D.N.Y. Jan. 23, 2008) ("Furthermore, it does not seem that [a] trial is a prerequisite to such a claim."); *Canario v. City of New York,* No. 05 CV 9343, 2006 WL 2015651, at *2–4 (S.D.N.Y. July 12, 2006) (stating that fair trial claim is available where charges were dismissed without trial). Moreover, *Alford* and *Perez* did not involve plaintiffs who accepted ACDs.

[6] Plaintiffs argue that this failure is strange because, in connection with an unrelated arrest the next day, Sarman noted, in his memo book, "marijuana on both floor mats in front." (Mosaku Decl. Ex. 21.)

[7] While plaintiffs argue that this entry refers to Apostol's car, Sarman testified that the entry refers to the NYPD vehicle. (*See* Sarman Dep. at 54:2–15.)

11

to the criminal complaint or otherwise forward information to prosecutors that resulted in plaintiffs' detention. (*See* Morales Dep. at 97:18–98:25; Crim. Compl.) This fatally undermines the fair trial claims against Sarman. As another court in this district recently held in a case involving plaintiffs' counsel and defendants Morales and Sarman, "There is no record evidence that any police officer other than Morales was involved in preparing the criminal complaint, and accordingly, summary judgment in favor of Sarman on the denial of the right to fair trial claim is granted." *Struthers v. City of New York*, No. 12 CV 242, 2013 WL 2390721, at *13 (E.D.N.Y. May 31, 2013). Here, as in *Struthers*, the fair trial claims against Sarman fail as a matter of law.

Moreover, construing the record in the light most favorable to plaintiffs, the Court finds that plaintiffs raise no genuine issue of fact concerning whether Morales fabricated evidence. The record reflects that both Morales and Sarman testified under oath to seeing two marijuana cigarettes and loose marijuana in Apostol's car, and that Morales vouchered two cigarettes whose contents both field and laboratory testing confirmed to be marijuana. Plaintiffs do not dispute that Morales vouchered the cigarettes or that the forensic testing was accurate. Instead, they offer only self-serving testimony that Apostol's car contained no marijuana, which they attempt to bolster with (1) the conclusory assertion that the police officers, who had already arrested plaintiffs for stealing a car, should have notified them immediately about discovering marijuana too; (2) speculation that after Morales discovered that the plates on Apostol's car were, in fact, not stolen, he invented the marijuana charges to avoid admitting that he lacked a valid reason to detain plaintiffs; and (3) conjecture about what Sarman should have written in his memo book. This is wishful thinking, not concrete evidence that raises a genuine issue of material fact.

Plaintiffs cannot withstand summary judgment by making unsubstantiated, convenient claims – for example, that someone must have planted the marijuana, or that Morales would have notified plaintiffs immediately that he had discovered marijuana if his discovery were genuine. *See Carlisle v. City of New York*, No. 05 CV 6825, 2007 WL 998729, at *3 (S.D.N.Y. Apr. 2, 2007) ("[P]laintiff's unsupported, conclusory allegation that someone must have planted the evidence because there is no other way it could have gotten [there] is not sufficient to defeat a motion for summary judgment."); *see also Shmueli v. City of New York*, No. 03 CV 1195, 2007 WL 1659210, at 6 (S.D.N.Y. June 7, 2007) (granting defendants summary judgment on plaintiff's claim that ex-boyfriend conspired with prosecution to fabricate evidence that plaintiff harassed him telephonically, where plaintiff provided testimony from herself and a friend that the ex-boyfriend repeatedly telephoned his own office from plaintiff's apartment). Moreover, plaintiffs' speculation about Morales's motive to fabricate the marijuana defies common sense and lacks support in the record; the marijuana charges did nothing to revive the grand larceny charge, and by all accounts, the police readily disclosed the NYSPIN error.

Further, plaintiffs' conjecture about Sarman's memo book is much ado about nothing. Sarman's mentioning only the grand larceny charge in his memo book does not raise a genuine issue about whether another officer fabricated marijuana charges; Sarman did not process plaintiffs' arrests, his memo book is not a police report, and the memo book's silence about the marijuana charges does not compromise the strength of the evidence against plaintiffs. *See Hewitt v. City of New York*, No. 09 CV 214, 2012 WL 4503277, at *1 (E.D.N.Y. Sept. 28, 2012) (granting defendants summary judgment, reasoning that "[a]pparent inconsistencies and minor discrepancies [in police paperwork] do not meaningfully diminish the strength of the evidence available to the defendant officers at the time of the plaintiff's arrest and prosecution.")

Similarly, Sarman's notation that whatever vehicle he drove to the precinct contained "no contraband" raises no genuine issue about whether Morales fabricated the cigarettes. Such an inference would require the fact-finder to heap conjecture upon conjecture – that the notation describes Apostol's car, that the notation is accurate, that Morales therefore fabricated the allegation about loose marijuana, and that Morales must therefore have also fabricated the marijuana cigarettes. For all these reasons, the Court finds that plaintiffs fail to cite sufficient proof from which a reasonable juror could conclude that Morales fabricated evidence.

Defendants are, therefore, entitled to summary judgment on the fair trial claims.

### C.  Plaintiffs' Claims for Failure to Intervene

Plaintiffs claim that Sarman and Morales failed to intervene to prevent each other's violations of plaintiffs' constitutional rights. "A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). An officer who fails to intercede may be liable for preventable harm caused by the actions of other officers if he or she observes or has reason to know that those other officers violated someone's constitutional rights. *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). A failure-to-intervene claim "is contingent upon the disposition of the primary claims underlying [such] claim." *Struthers*, 2013 WL 2390721, at *17 (internal quotation marks omitted). Furthermore, liability may only attach when "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer d[id] not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill*, 839 F.2d at 11–12).

Because none of plaintiffs' underlying constitutional claims survives summary judgment, neither do their claims for failure to intervene. *See Hewitt*, 2012 WL 4593277, at *10 ("Because the Court has already ruled . . . that plaintiff has failed to raise a genuine issue of material fact that her 'constitutional rights' were 'violated' by any officers under any theory, summary judgment must be granted as to this claim [for failure to intervene]."). Defendants are, therefore, entitled to summary judgment on all of plaintiffs' remaining claims, including the claims for failure to intervene.

## CONCLUSION

Defendants' motion for summary judgment is granted in its entirety. The Clerk of the Court is directed to enter judgment accordingly, and close this case.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
       March 26, 2014

_____
ROSLYNN R. MAUSKOPF
United States District Judge